IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                      |   |                               |
|----------------------|---|-------------------------------|
| DAVID I. SCHOENHOLTZ | : |                               |
|                      | : |                               |
| v.                   | : | Civil Action No. DKC 22-2584  |
|                      | : |                               |
| BRIVO, INC.          | : |                               |
|                      | : |                               |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case brought by Plaintiff David Schoenholtz ("Plaintiff") is the motion for summary judgment filed by Defendant Brivo, Inc. ("Defendant" or "Brivo"). (ECF No. 32). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

**I.  Background[1]**

From October 2015 to February 2020, Plaintiff, a Jewish man, worked as a sales support representative at Brivo, a company that develops and sells cloud-based security products. (ECF Nos. 1-1, at 1; 33, at 2 and 4; 34, at 10). From 2015 to 2018, Plaintiff's direct supervisor was Nicki Saffell ("Ms. Saffell"), and until 2017, Christine Lau ("Ms. Lau") was Ms. Saffell's supervisor. (ECF Nos. 1-1, at 1; 32-22, at 11-12, 18).

---

[1] Unless otherwise noted, the following facts are undisputed.

In October of 2016, Plaintiff reported to a human resources employee, Candice Scott ("Ms. Scott"), that he had received "sexually suggestive" communications from Ms. Lau, and he was "less comfortable" at work.  He also told HR that he had been interested in applying for a different position, and had arranged to shadow an employee in that position, but Ms. Lau canceled the arranged outing. He reported that she stated it was because of the other employee, but Plaintiff was not sure if Ms. Lau's stated reason was true.  (ECF Nos. 32-7, at 2-3; 1-1, at 1).[2]

Plaintiff showed the HR employee screenshots of text messages he received several months before from Ms. Lau, including a message Ms. Lau wrote regarding a potential outing Plaintiff and Ms. Lau were discussing.  (ECF Nos. 32-7, at 4-7; 1-1, at 1).  Plaintiff viewed the messages as "unwanted sexual advances."  (ECF No. 1-1, at 1).  Plaintiff viewed Ms. Saffell as being involved and/or "complicit" in Ms. Lau's advances, (ECF No. 1-1, at 1), and provided screenshots of messages over the course of one day from Ms. Saffell to Plaintiff, including one saying "[Ms. Lau] asked if you were single," "I think she really likes you," "[s]he's trying to flirt with you, and "[s]he thinks you're very attractive and from what she knows sweet." (ECF No. 32-7, at 8-9).

---

[2] In its answer, Defendant admits, upon information and belief, that it was Ms. Saffell, and not Ms. Lau, who initiated the cancellation in 2016 because she felt that Plaintiff was not ready for the position.  (ECF No. 13, at 4-5.)

At some point in 2018, Ms. Saffell asked Plaintiff to buy lunch for her. (ECF 1-1, at 2). When Plaintiff told Ms. Saffell how much she owed him for her lunch, Ms. Saffell replied "God David! Why are you so Jewish sometimes?". (ECF No. 1-1, at 2).

In 2018, Seneca Daniels ("Mr. Daniels") became Plaintiff's direct supervisor, and Mr. Daniels reported to Ms. Saffell. (ECF Nos. 32-22, at 18; 33, at 8). When Plaintiff submitted his request for discretionary time off for the Jewish holidays of Rosh Hashana and Yom Kippur, Mr. Daniels told Plaintiff that Mr. Daniels was only approving the time off "because he was required to do so." (ECF Nos. 32-22, at 20; 33, at 8).

Additionally, according to Plaintiff, Ms. Saffell had granted Plaintiff a religious accommodation to leave early on Fridays and work remotely on Friday afternoons to observe Shabbat. (ECF No. 34, at 10). Plaintiff alleges that at some point in 2018, Mr. Daniels rescinded this accommodation. (ECF No. 34, at 10). Plaintiff alleges that when he asked Mr. Daniels to reimplement the accommodation, Mr. Daniels refused to do so, stating that he needed a senior employee to cover that shift. (ECF No. 34, at 10).[3]

---

[3] Defendant recites that, at the end of 2018, Plaintiff requested to relocate to California and work 100% remotely. The request was granted, and he worked in that fashion from January 1, 2019, until his resignation date of February 3, 2020. (ECF No. 33, at 8-9).

In December 2019, Mr. Daniels placed Plaintiff on a Performance Improvement Plan ("PIP"). (ECF No. 1-1, at 2). According to Defendant, Plaintiff was placed on the plan because Plaintiff's job performance declined. (ECF No. 33, at 9). According to Plaintiff, his job performance was up to par, and Mr. Daniels put Plaintiff on the PIP because of "Mr. Daniels' contempt for [Plaintiff's] religion." (ECF Nos. 1-1, at 2; 34, at 10-11). Plaintiff relies on testimony and screenshots of supervisors and colleagues praising his work to show that his performance did not decline. (ECF Nos. 34, at 11; 34-4).

On January 31, 2020, Plaintiff informed his team, including Mr. Daniels, that he had a personal emergency and would be unable to work that day. (ECF No. 1-1, at 2). Mr. Daniels rejected Plaintiff's leave request. (ECF No. 1-1, at 2).

On February 3, 2020, Plaintiff gave two weeks' notice of his resignation, and on February 4, 2020, Defendant terminated his employment. (ECF No. 1-1 at 2). On November 2020, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1, at 6). In July 2022, Plaintiff received a right to sue notice from the EEOC. (ECF No. 1, at 11). On October 8, 2022, Plaintiff filed a complaint against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Maryland Human Relations Commission Act, and the Maryland Fair

Employment Practices Act ("MFEPA"). (ECF No. 1, at 4). Plaintiff asserts federal question jurisdiction. (ECF No. 1-2, at 1).

Plaintiff's complaint is presented on a form that provides check boxes for several items, including the basis for jurisdiction, the nature of the discriminatory conduct, and the basis of the alleged discrimination. Plaintiff checked multiple boxes in each category, but the accompanying statement of facts does not delineate clearly or differentiate any particular claim. (ECF No. 1).

On January 2, 2023, Defendant filed an answer (ECF No. 13), and on April 29, 2024, Defendant filed a motion for summary judgment. (ECF Nos. 32, 33). On May 21, 2024, Plaintiff filed a response in opposition to Defendant's motion for summary judgment (ECF No. 34). On June 4, 2024, Defendant filed a reply to Plaintiff's response in opposition to its motion for summary judgment. (ECF No. 35).

## II.  Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the

5

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

Plaintiff and Defendant attach several exhibits to their filings. Apart from Defendant's deposition of Plaintiff and an affidavit from Defendant's highest ranking human resource employee, the parties do not include a declaration or affidavit authenticating their exhibits. The court may still consider the exhibits, however, because "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, No. 21-cv-1818-DKC, 2024 WL 895122, at *8 (D.Md. Mar. 1, 2024) (quoting *Wake v. Nat'l R.R. Passenger, Corp.*, No. 12-cv-1510-PWG, 2013 WL 5423978, at *1 (D.Md. Sept. 26, 2013)), *reconsideration denied*, No. 21-cv-1818-DKC, 2024 WL 1513522 (D.Md. Apr. 8, 2024).

The parties would be able to provide admissible versions of their documents at trial. The authors of the communications between Plaintiff's colleagues and supervisors and Plaintiff (ECF Nos. 32-7, at 4-9; 34), would be able to authenticate the documents

by testifying as to their personal knowledge of writing the emails and messages.  Fed.R.Evid. 901(b)(1).

## III. Analysis

Plaintiff asserts multiple claims against Defendant, including claims under Title VII, 42 U.S.C. §§ 2000e—2000e-17 for termination of his employment, failure to promote, unequal terms and conditions of his employment, and retaliation, all based on his religion and/or gender/sex; claims under the ADA, 29 U.S.C. §§ 12112-12117; and claims under the Maryland Human Relations Commissions Act and the MFEPA.  (ECF No. 1, at 4-5).  In its motion for summary judgment, Defendant asserts that it is entitled to summary judgment on all of Plaintiff's claims.  (ECF No. 33, at 19).  Plaintiff's opposition disputes some of Defendant's factual recitations and only argues that he should be able to proceed on his disability discrimination/FMLA interference claim based on his taking medical leave and his hostile work environment/termination claim based on his religion.  Arguably, all other claims have been abandoned.  Regardless, all claims fail.

### A. Title VII Religion-based Claims

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

### 1. Unequal Terms and Conditions of Employment: Religion-based Hostile Work Environment

Defendant argues that Plaintiff has not shown direct evidence necessary to prove a religious discrimination claim under Title VII. It contends that Ms. Saffell's "God, David! Why are you so Jewish sometimes?" comment and Mr. Daniels's statement that he was only giving Plaintiff time off for his religious holidays because he was "legally required" to do not "reflect[] a discriminatory animus towards the Jewish faith." Instead, Mr. Daniels's statement arguably "reflected the reason why Plaintiff's [time off] request was granted-because he was a Jewish person observing a Jewish religious holiday." Defendant further asserts that, even if the statements do reflect animus, there was no "contested employment decision" associated with the statements. (ECF No. 33, at 12-13).

Defendant also contends that Plaintiff was put on a PIP because his "job performance sharply decline[d]." (ECF No. 33, at 9). Therefore, Defendant argues that Plaintiff cannot show direct evidence necessary for a Title VII religious discrimination claim. (ECF No. 33, at 13).

Plaintiff does not directly respond to these arguments or, frankly, describe with any precision what his religious discrimination claim or claims entail. At most, Plaintiff

reiterates in a chart of "[g]enuine [i]ssues of [m]aterial [f]act
in [d]ispute" that Ms. Saffell "used 'Jewish' in a pejorative way"
and stated "God, David! Why are you so Jewish sometimes" and
disputes Defendant's contention that Plaintiff admitted that Mr.
Daniels never discouraged him from taking time off or never denied
a request for time off for a religious holiday. (ECF Nos. 1-1, at
2; 34, at 2-3). If generously construed, Plaintiff may be
attempting to assert and prove a religion-based hostile work
environment claim and/or termination claim. (ECF No. 34, at 9).
Plaintiff argues that he "experienced antisemitic jokes and
comments from both of his direct supervisors." (ECF No. 34, at
10). Plaintiff contends that Ms. Saffell's comment "God, David!
Why are you so Jewish sometimes?" and Ms. Saffell's inquiries into
his "living arrangements and how he pays for goods" "invok[ed]
antisemitic stereotypes." (ECF Nos. 1-1, at 2; 34 at 10).

Additionally, Plaintiff argues that Mr. Daniels "expressed
contempt" for Plaintiff's religion by stating that he was only
giving Plaintiff time off for his religious holidays because he
was "legally required" to do so. (ECF No. 34, at 10). Plaintiff
argues that Mr. Daniels "rescinded a religion accommodation that
Ms. Saffell granted [Plaintiff] to observe Shabbat." (ECF No. 34,
at 10). Plaintiff contends that his performance was up to par,
and "[i]t [was] Mr. Daniels' contempt for [Plaintiff's] religion
that ultimately led to him placing [Plaintiff] on a performance

improvement plan." (ECF No. 34, at 10-11). Plaintiff points to multiple written exchanges with superiors and colleagues in 2019 and early 2020 to support his contention that his performance did not decline. (ECF No. 34, at 3-5).

In its reply, Defendant contends, in part, that any Title VII religious-based harassment claim would be time barred. (ECF No. 35, at 9-10). Ordinarily, it would be too late to raise this argument in a reply. Because Plaintiff still has not articulated that he intends to bring such a claim, the argument might not have been waived. It is not necessary to address the time-bar issue, though, because any hostile environment/harassment claim fails on the merits.

Defendant acknowledges Ms. Saffell's comment, but argues that because Plaintiff has testified that he did not remember whether he reported any of the alleged antisemitic comments, there is no genuine dispute of material fact. (ECF No. 35 at 3). Additionally, Defendant argues that "Mr. Daniels never expressed concern about Plaintiff taking time off for religious holidays, did not discourage him from taking the time off, and never denied Plaintiff time off for observance of religious holidays." (ECF No. 35, at 3). Defendant also argues that the evidence Plaintiff relies on in support of his satisfactory performance is unreliable, hearsay, and unauthenticated; therefore, it does not create a genuine issue of material fact. (ECF No. 35, at 4).

10

Defendant argues that the remarks Plaintiff identified were "isolated[,] stray" remarks that had no bearing on any employment decision.  (ECF No. 35 at 10).  Additionally, Defendant argues that there is no other evidence that Plaintiff was terminated because he was Jewish, and there were other Jewish employees who had not been considered for termination.  (ECF No. 35, at 10-11).

> "[T]o establish that [his or] her workplace was religiously hostile under Title VII, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's religion; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'"

*Johnson v. United Parcel Serv., Inc.*, 839 F.App'x 781, 784 (4th Cir. 2021) (citation omitted).

"'If the harasser is a supervisor, then the employer may be either strictly or vicariously liable,' depending on whether the harassment culminates in a tangible employment action." *Johnson v. United Parcel Serv., Inc.*, No. 17-1771-cv-SAG, 2020 WL 779459, at *9 (D.Md. Feb. 14, 2020), *aff'd*, 839 F. App'x 781 (4th Cir. 2021) (quoting *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 333 (4th Cir. 2018)).

Plaintiff has shown that he was subject to what he perceived as "unwelcome conduct" by his supervisors "that is based on [his] religion." *Johnson*, 839 F.App'x at 784.  In response to Plaintiff telling Ms. Saffell, his direct supervisor, how much she owed him

for lunch, she responded "God, David! Why are you so Jewish
sometimes?" (ECF No. 1-1, at 2). Additionally, Mr. Daniels's
statement that he was only giving Plaintiff time off for his
religious holidays because he was "legally required" to do so was
also "unwelcome conduct" by Plaintiff's supervisor based on
Plaintiff's religion. (ECF No. 34, at 10).

The "severe or pervasive" element is both subjective and
objective. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315
(4th Cir. 2008) (citations omitted). Plaintiff has shown that he
personally felt the harassment to be severe. "[W]hen determining
whether the harassing conduct was objectively
'severe or pervasive,' we must look 'at all the circumstances,'
including 'the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or
a mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance.'" *Sunbelt Rentals, Inc.*, 521
F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17,
21 (1993)).

> While this standard surely prohibits an employment
> atmosphere that is "permeated with discriminatory
> intimidation, ridicule, and insult," *Harris,* 510 U.S. at
> 21, 114 S.Ct. 367 (internal quotations omitted), it is
> equally clear that Title VII does not establish a
> "general civility code for the American
> workplace," *Oncale [v. Sundowner Offshore Servs.,
> Inc.],* 523 U.S. [75], [] 80, [] [1998]. This is because,
> in order to be actionable, the harassing "conduct must
> be [so] extreme [as] to amount to a change in the terms
> and conditions of employment." *Faragher v. City of Boca*

12

> *Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d
> 662 (1998). Indeed, as the Court observed, "simple
> teasing, offhand comments, and isolated incidents
> (unless extremely serious) will not amount to
> discriminatory changes in the terms and conditions of
> employment." *Id.* (internal quotations and citations
> omitted); *see also Clark County Sch. Dist. v.
> Breeden,* 532 U.S. 268, 270–71, 121 S.Ct. 1508, 149
> L.Ed.2d 509 (2001).
>
> Our circuit has likewise recognized that plaintiffs must
> clear a high bar in order to satisfy the severe or
> pervasive test. Workplaces are not always harmonious
> locales, and even incidents that would objectively give
> rise to bruised or wounded feelings will not on that
> account satisfy the severe or pervasive standard. Some
> rolling with the punches is a fact of workplace life.
> Thus, complaints premised on nothing more than "rude
> treatment by [coworkers]," *Baqir v. Principi*, 434 F.3d
> 733, 747 (4th Cir. 2006), "callous behavior by [one's]
> superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324
> F.3d 761, 765 (4th Cir. 2003), or "a routine difference
> of opinion and personality conflict with [one's]
> supervisor," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276
> (4th Cir. 2000), are not actionable under Title VII.
>
> The task then on summary judgment is to identify
> situations that a reasonable jury might find to be so
> out of the ordinary as to meet
> the severe or pervasive criterion. That is, instances
> where the environment was pervaded with discriminatory
> conduct "aimed to humiliate, ridicule, or intimidate,"
> thereby creating an abusive atmosphere. *Jennings v.
> Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir.
> 2007) (en banc) (citing *Meritor* [Sav. Bank, FSB v.
> Vinson], 477 U.S. [57] [] 65, [] [(1986)]).

*Sunbelt Rentals, Inc.*, 521 F.3d at 315-16.

While Plaintiff may have shown evidence of "rude treatment"
and even "callous behavior" from his supervisors, he has not
provided enough evidence to meet the "high bar" "that a reasonable
jury might find to be so out of the ordinary as to meet the severe
or pervasive criterion." *Sunbelt Rentals, Inc.*, 521 F.3d at 315-

16.  Ms. Saffell calling Plaintiff "so Jewish" for letting her know how much her lunch cost, and Mr. Daniels telling Plaintiff he was only giving Plaintiff off for his religious holidays because he was legally required to, may have been offensive.  Because, however, these were "isolated incidents" by different supervisors over the course of several years that were not "extremely serious," they do not meet the high bar to create a dispute of material fact whether Defendant's unwelcome conduct was "severe or pervasive." *Sunbelt Rentals, Inc.*, 521 F.3d at 315-16.

As additional evidence for Plaintiff's hostile work environment claim, Plaintiff may intend to rely on Mr. Daniels' recission of Plaintiff's religious accommodation to leave early on Fridays and work remotely to observe Shabbat (ECF No. 34, at 10). This fact does not support a hostile work environment claim; rather, it would perhaps support a religion-based failure to accommodate claim.  Plaintiff, however, has not alleged failure to accommodate religion in his complaint.

Because Plaintiff cannot demonstrate that the unwelcome conduct based on his religion was "severe or pervasive," Defendant's motion for summary judgment will be granted as to this claim.

### 2. Termination

Plaintiff also checked a box for termination of employment, again seemingly based on religion. (ECF No. 1, at 5).  Defendant's

general view is that Plaintiff voluntarily resigned and has not shown that it was a constructive discharge, and certainly not the result of intolerable working conditions based on religion, gender, disability, or retaliation. (ECF No. 33, at 11-12).[4]

Plaintiff argues that he was terminated because Defendant accelerated Plaintiff's resignation and chose to end Plaintiff's employment on February 4, 2020, instead of February 14, 2020. (ECF No. 34, at 5). Plaintiff also disputes the reason he was placed on the PIP that led to his resignation and planned termination. Plaintiff argues that he was put on the PIP because of "Mr. Daniels' contempt for [Plaintiff's] religion," and not because of Plaintiff's declining performance. (ECF Nos. 1-1, at 2; 34, at 10-11). As evidence of Mr. Daniels's "contempt," for Plaintiff's religion, Plaintiff states that Mr. Daniels "rescinded a religious accommodation that Ms. Saffell granted [Plaintiff] so he could observe Shabbat, the Jewish Sabbath." (ECF No. 34, at 10). Plaintiff also relies on testimony and screenshots of supervisors and colleagues praising his work to show that his performance did not decline. (ECF Nos. 34, at 11; 34-4).

---

[4] According to Defendant, Plaintiff was put on the PIP because of a "sharp decline" in Plaintiff's work. Because Plaintiff continued to make mistakes while on the PIP, Defendant decided to terminate Plaintiff. Before Defendant could inform Plaintiff that he was being terminated, Plaintiff resigned. (ECF No. 33, at 9-10).

In its reply, Defendant argues that there is no dispute of material fact because it is undisputed that Plaintiff voluntarily resigned, and Defendant accepted that resignation and "chose to accelerate the notice period." (ECF No. 35, at 5). Additionally, Defendant contends that the facts in support of Plaintiff's positive performance are from "unreliable hearsay statements of non-parties and unreliable, unauthenticated documents" that cannot be considered on a motion for summary judgment. (ECF No. 35, at 4).

> To state a prima facie claim of discriminatory termination based on religion, [Plaintiff] must prove that (1) [he or] she is a member of a protected class; (2) [he or] she performed [his or] her job satisfactorily; (3) [he or] she was terminated from employment, and (4) the position remained open to similarly qualified applicants after her termination. *See Marrs v. Marriott Corp.*, 830 F.Supp. 274, 281 (D.Md. 1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). [Plaintiff] also must show that [his or her employer] "acted with discriminatory motive or treated [him or] [her] less favorably than others" because of [his or] her religion. *Id*.

*Abdelkader v. Sears, Roebuck & Co.*, 780 F.Supp.2d 389, 396 (D.Md. 2011).

Plaintiff is Jewish, and thus a member of a protected class because of his religion. Although there may be a dispute of fact whether Plaintiff performed his job satisfactorily, Plaintiff cannot show a discriminatory termination claim because Plaintiff has not shown that he was terminated. It is undisputed that

16

Plaintiff resigned by providing Defendant with two weeks' notice on February 3, 2020.  (ECF. No. 1-1, at 2).

The acceleration of Plaintiff's end date by Defendant does not constitute termination.  Other courts in this circuit have found that an employer's acceptance of an employee's resignation earlier than the employee intended does not constitute termination.  *See Hickey v. Bon Secours Richmond Health Sys.*, No. 3:12CV691, 2012 WL 6623039, at *5 (E.D.Va. Dec. 19, 2012)(writing that it is "undoubtedly correct" that "an acceptance of an employee's resignation prior to the intended last day does not convert a resignation into termination" although ultimately finding that the employee did not resign); *Vasquez v. Potomac Hosp., Inc.*, No. 1:10-CV-216, 2010 WL 3984685, at *5-6 (E.D.Va. Oct. 8, 2010) (agreeing with older cases from the United States Courts of Appeals for the Fifth and Eighth Circuits and finding that early acceptance of an employee's resignation was not retaliatory termination).  Because Plaintiff cannot show he was terminated, Plaintiff cannot prevail on a termination claim.

Moreover, Plaintiff has not supported a constructive termination claim. The United States Court of Appeals for the Fourth Circuit recently held in a race-based constructive discharge case that "[t]o state a claim for constructive discharge premised on a hostile work environment in this circuit, [Plaintiff] must show '"something more" than the showing required for a hostile

17

work environment claim.'"  *Decoster v. Becerra*, 119 F.4th 332, 339 (4th Cir. 2024) (quoting *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)).

> Namely, [he or] she must show that because of [his or] her employer's conduct, [he or] she "was subjected to circumstances 'so intolerable that a reasonable person would resign,'" *Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 144-45 (4th Cir. 2017) (quoting *Green v. Brennan*, 578 U.S. 547, 560, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016)), "and that [he] she actually resigned," *Evans*, 936 F.3d at 193.

*Id.* at 339-40.  As discussed above, Plaintiff has not shown a hostile work environment claim.  Accordingly, he cannot show a constructive discharge claim which requires "something more" than a hostile work environment claim.  Summary judgment will be granted to Defendant on Plaintiff's religion-based termination claims.

## B. Title VII Gender/Sex-based Claims

Again, while not entirely clear, Plaintiff may intend to bring a hostile work environment claim based on sexual harassment and some form of a retaliatory failure to promote claim.

### 1. Unequal Terms and Conditions of Employment: Sexual Harassment-based Hostile Work Environment

Defendant asserts that the messages between Ms. Lau and Plaintiff were "nothing more than, at worst, sophomoric flirtation, or more realistically, reciprocal workplace banter about possibly attending a baseball game and a Washington[,] D.C. international embassy event."  (ECF No. 33, at 4).  Plaintiff responds that, in addition to text messages, Ms. Lau also sent

18

messages to Plaintiff using google chats "to get [him] to spend time with her outside of work, and expressed interest in [him] in a romantic way." (ECF No. 34, at 2).

Defendant ultimately argues that "there is no evidence whatsoever to support any claim that Plaintiff was treated unlawfully based on sex or gender and any such claim should be deemed abandoned, entitling [Defendant] to summary judgment." (ECF No. 35, at 12).

> To succeed on a hostile work environment claim alleging sexual harassment, a plaintiff must show that the offensive conduct (1) was unwelcome, (2) was based on [his or] her sex, (3) was "sufficiently severe or pervasive to alter [his or] [her] conditions of employment and to create an abusive work environment," and (4) was imputable to [his or] her employer. *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013) (citation omitted).

*Ray v. Int'l Paper Co.*, 909 F.3d 661, 666-67 (4th Cir. 2018).

Plaintiff has not produced the google chats between Ms. Lau and Plaintiff. While Plaintiff contends that these messages were unwelcome, even if the google chat messages exist, the texts and potential google chat messages asking Plaintiff to "spend time [] outside of work" and "express[ing] interest in [Plaintiff] in a romantic way" are not enough to create a genuine issue of material fact that the alleged harassment was "sufficiently severe or pervasive."

Additionally, Plaintiff's assertion that Ms. Saffell was involved and/or "complicit" based on Ms. Saffell's messages from one day to Plaintiff saying "[Ms. Lau] asked if you were single,"

"I think she really likes you," "[s]he's trying to flirt with you, and "[s]he thinks you're very attractive and from what she knows sweet," (ECF No. 32-7, at 8-9), does not alter the result. Considered together, these incidents do not rise to the level of "sufficiently severe or pervasive." Therefore, Defendant's motion for summary judgment will be granted as to Plaintiff's hostile work environment claim based on sexual harassment.

### 2. Retaliatory Failure to Promote

In its motion for summary judgment, Defendant argues in general that any potential retaliation claim fails. (ECF No. 33, at 15-17). Defendant argues that Plaintiff cannot show any evidence of causation between any potential protected activity and any adverse employment action. (ECF No. 33, at 15-17).

Outside of Plaintiff's complaint, Plaintiff does not address this claim. In his complaint, Plaintiff alleged that he "felt retaliation for not giving Ms. Lau and Ms. Saffell what they wanted." (ECF No. 1-1, at 1). Plaintiff alleged that Ms. Saffell approved a plan for Plaintiff to shadow an area account manager when Plaintiff was contemplating applying for that position, and Ms. Lau cancelled the outing. (ECF No. 1-1, at 1). Plaintiff alleged that Ms. Lau claimed she cancelled the outing because of the other employee, but Plaintiff questioned this reason and alleged that perhaps Ms. Lau cancelled the outing because he "did not respond to her sexual advances." (ECF No. 1-1, at 1).

This type of "retaliation" might be part of a quid pro quo sexual harassment claim, and not a Title VII retaliation claim at all.[5]  A Title VII retaliation claim requires, first, evidence of a Title VII protected activity:

> A prima facie case of retaliation requires proof that: (1) the plaintiff engaged in protected activity, (2) [he or] she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

*Ray*, 909 F.3d at 669.  While Plaintiff may have engaged in a protected activity when he reported his concerns about Ms. Lau to human resources, the purported "retaliation" of rescinding the shadowing opportunity had already taken place.  By definition, then, causation is lacking.  Plaintiff does not assert that any other action was in retaliation for making the HR complaint. Therefore, Defendant's motion for summary judgment will be granted as to Plaintiff's retaliatory failure to promote claim.

**C. Disability-based Claims**

Finally, Plaintiff may intend to assert claims for failure to accommodate his disability under the ADA, and for violations of the Maryland Human Relations Commission Act and the MFEPA.  (ECF No. 1, at 4-5).  Defendant argues that Plaintiff's disability

---

[5] A sufficiently pled quid pro quo sexual harassment claim is illustrated by *Twine v. AT&T, Inc.*, Case No. 23-cv-510, 2024 WL 4677960, at *5-6 (E.D.Va. Nov. 5, 2024).  At the summary judgment stage, Plaintiff must not only plead but provide evidentiary support for the claim.

claims fail because Plaintiff has not provided any evidence that
he notified Defendant of any disability or that he ever requested
an accommodation for a disability.  (ECF No. 33, at 17-18).

In response, Plaintiff argues that there is a genuine dispute
whether Defendant discriminated against Plaintiff for taking
medical leave.  (ECF No. 34, at 7).  Plaintiff argues that he
informed Mr. Daniels that Plaintiff "had a medical emergency as he
experienced a severe anxiety attack that morning," and Mr. Daniels
denied his request for leave.  (ECF No. 34, at 8).

Under the ADA and MFEPA, employers are prohibited from
discriminating based on disability.  42 U.S.C. § 12112(a); Md.
Code Ann., State Gov't § 20-606(a), *amended by* Discrimination—
Military Status—Prohibition, 2024 Maryland Laws Ch. 322 (H.B.
598).

> "To survive summary judgment on [a failure-to-
> accommodate] claim under the ADA, a plaintiff must show
> (i) [he or] she was disabled, (ii) the employer had
> notice of [his or] her disability, (iii) [he or] she
> could perform the essential functions of [his or] her
> position with a reasonable accommodation, and (iv) the
> employer refused to make such accommodation." *Cowgill v.
> First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir.
> 2022).

*Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 181 (4th
Cir. 2024).  "The MFEPA contains functionally identical
prohibitions and is evaluated under the same framework as the
Americans with Disabilities Act[.]"  *Teel v. Md. Nat. Treatment
Sols., LLC*, No. 23-cv-1694-RDB, 2024 WL 1075421, at *4 (D.Md. Mar.

12, 2024) (citing *Miller v. Md. Dep't of Nat. Res.*, 813 F.App'x 869, 874 (4th Cir. 2020); *Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 218-19 (Md. 2016)).

Even if Plaintiff could show he was disabled, he has not provided any evidence that Defendant had notice of his disability. In his deposition, Plaintiff testified that he did not disclose any diagnosis of an anxiety disorder or a mental health disability to anyone at Brivo prior to February 3, 2020. (ECF No. 32-22, at 34). Additionally, Plaintiff testified that while he messaged his team, including Mr. Daniels, that he had an emergency, Plaintiff did not describe what kind of emergency he had. (ECF No. 32-22, at 34). Therefore, there is no genuine dispute of material fact that Defendant had notice of Plaintiff's alleged disability, and Defendant's motion for summary judgment will be granted as to Plaintiff's disability claims.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge